1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11

| SHAMAH D. MOODY, | ) | Case No. EDCV 06-857 JC |
|---|---|---|
| Plaintiff, | ) ) ) | MEMORANDUM OPINION AND |
| v. | ) | ORDER OF REMAND |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

12
13
14
15
16

17

**I.      SUMMARY**

On August 18, 2007, plaintiff Shamah D. Moody ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; August 23, 2006 Case Management Order, ¶ 5.

18
19
20
21
22
23
24
25
26
27
28

---

[1]Michael J. Astrue is substituted as Commissioner of Social Security pursuant to Fed. R. Civ. P. 25(d)(1).

1

1    Based on the record as a whole and the applicable law, the decision of the

2   Commissioner is REVERSED AND REMANDED for further proceedings

3   consistent with this Memorandum Opinion and Order of Remand because the

4   articulated basis upon which the Administrative Law Judge ("ALJ") discounted

5   the opinion of plaintiff's treating physician's opinion is not supported by

6   substantial evidence.

7   **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

8   **DECISION**

9    On October 15, 2003, plaintiff applied for supplemental security income and

10   disability insurance benefits.  (Administrative Record ("AR") 13, 59-62).  Plaintiff

11   asserted that he became disabled beginning on July 1, 2002, due to severe manic

12   depression, psychosis, memory loss and anxiety attacks.  (AR 84-85).  An ALJ

13   examined the record and heard testimony from plaintiff (who was represented by

14   counsel), a medical expert (who testified telephonically) and a vocational expert

15   on February 16, 2006.  (AR 13, 323-60).

16    On April 27, 2006, the ALJ found, inter alia, that plaintiff was not disabled

17   at any time through the date of the decision.  (AR 10-19).  Specifically, the ALJ

18   found:  (1) plaintiff suffered from the following severe impairments:  mixed

19   substance abuse, mood disorder with psychosis and personality disorder, not

20   otherwise specified (AR 17); (2) plaintiff's impairments or combination of

21   impairments, did not meet or medically equal one of the listed impairments

22   (AR 14, 17); (3) when taking into account the effects of plaintiff's substance

23   abuse, plaintiff retained the following residual functional capacity:  (i) mild

24   restrictions of activities of daily living; (ii) moderate difficulties in maintaining

25   social functioning; (iii) moderate-to-marked difficulties in maintaining

26   concentration, persistence or pace; and (iv) multiple repeated episodes of

27   extended-duration decompensation (AR 14, 18); (4) when discounting the effects

28   of plaintiff's substance abuse, plaintiff retained the following residual functional

2

1   capacity:  (i) mild restrictions of activities of daily living; (ii) mild difficulties in

2   maintaining social functioning; (iii) mild difficulties in maintaining concentration,

3   persistence or pace; and (iv) no repeated episodes of extended-duration

4   decompensation, resulting in limitation to simple tasks (AR 18); (5) plaintiff had

5   no past relevant work (AR 18); (6) when taking into account plaintiff's substance

6   abuse, plaintiff is unable to perform work that exists in significant numbers in the

7   regional and national economies (AR 18); and (7) when discounting the effects of

8   plaintiff's substance abuse, plaintiff could perform work that exists in significant

9   numbers in the national economy.  (AR 18).  The ALJ further found that plaintiff's

10   substance abuse was a contributing factor material in the determination of

11   disability.  (AR 17).

12        The Appeals Council denied plaintiff's application for review of the ALJ's

13   decision.  (AR 5-9).

14   **III.    APPLICABLE LEGAL STANDARDS**

15        **A.      Sequential Evaluation Process**

16        To qualify for disability benefits, a claimant must show that he is unable to

17   engage in any substantial gainful activity by reason of a medically determinable

18   physical or mental impairment which can be expected to result in death or which

19   has lasted or can be expected to last for a continuous period of at least twelve

20   months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

21   § 423(d)(1)(A)).  The impairment must render the claimant incapable of

22   performing the work he previously performed and incapable of performing any

23   other substantial gainful employment that exists in the national economy.  Tackett

24   v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

25        In assessing whether a claimant is disabled, an ALJ is to follow a five-step

26   sequential evaluation process:

27        (1)    Is the claimant presently engaged in substantial gainful activity?  If

28             so, the claimant is not disabled.  If not, proceed to step two.

1  (2) Is the claimant's alleged impairment sufficiently severe to limit

2     his ability to work?  If not, the claimant is not disabled.  If so,

3     proceed to step three.

4  (3) Does the claimant's impairment, or combination of

5     impairments, meet or equal an impairment listed in 20 C.F.R.

6     Part 404, Subpart P, Appendix 1?  If so, the claimant is

7     disabled.  If not, proceed to step four.

8  (4) Does the claimant possess the residual functional capacity to

9     perform his past relevant work?[2]  If so, the claimant is not

10     disabled.  If not, proceed to step five.

11  (5) Does the claimant's residual functional capacity, when

12     considered with the claimant's age, education, and work

13     experience, allow him to adjust to other work that exists in

14     significant numbers in the national economy?  If so, the

15     claimant is not disabled.  If not, the claimant is disabled.

16 Stout v. Commissioner, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R.

17 §§ 404.1520, 416.920).

18  The ALJ has an affirmative duty to assist the claimant in developing the

19 record at every step of the inquiry.  Bustamante v. Massanari, 262 F.3d 949, 954

20 (9th Cir. 2001); see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)

21 (ALJ has special duty to fully and fairly develop record and to assure that

22 claimant's interests are considered).  The claimant has the burden of proof at steps

23 one through four, and the Commissioner has the burden of proof at step five.

24 Bustamante, 262 F.3d at 953-54 (citing Tackett); see also Burch, 400 F.3d at 679

25 (claimant carries initial burden of proving disability).  If, at step four, the claimant

26 meets his burden of establishing an inability to perform past work, the

27

28  [2]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

1  Commissioner must show, at step five, that the claimant can perform some other

2  work that exists in "significant numbers" in the national economy, taking into

3  account the claimant's residual functional capacity, age, education, and work

4  experience.  Tackett, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)).  The

5  Commissioner may do so by the testimony of a vocational expert or by reference

6  to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,

7  Appendix 2 (commonly known as "the Grids").  Id.

8          **B.      Standard of Review**

9          Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

10  benefits only when the ALJ's findings are based on legal error or are not supported

11  by substantial evidence in the record as a whole.  Parra v. Astrue, 481 F.3d 742,

12  746 (9th Cir. 2007); Robbins v. Social Security Administration, 466 F.3d 880, 882

13  (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d

14  1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a

15  reasonable mind might accept as adequate to support a conclusion."  Richardson v.

16  Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more

17  than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882

18  (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

19          To determine whether substantial evidence supports a finding, a court must

20  "'consider the record as a whole, weighing both evidence that supports and

21  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.

22  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

23  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

24  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

25  of the ALJ.  Parra, 481 F.3d at 746; Robbins, 466 F.3d at 882.

26  ///

27  ///

28  ///

## C.     Assessment of Treating Physicians' Opinions

In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).  The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).[3]  The ALJ can reject the opinion of a treating physician

---

[3]A treating doctor's opinion can be discounted if the opinion is (i) unsupported by the doctor's own treatment notes; (ii) is conclusory, brief, and unsupported by the record as a whole or by objective evidence; and/or (iii) is based on the claimant's subjective complaints which are unsupported or properly discredited by the ALJ.  See Connett, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (variance between physician's opinion and his own treatment notes may be used to deem opinion untrustworthy), cert. denied, 519 U.S. 1113 (1997); Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole or by objective medical findings); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ need not accept treating physician's opinion if it is conclusory and brief and unsupported by clinical findings); Burkhart v. Bowen, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (ALJ properly rejected treating physicians' opinion which was unsupported by medical findings, personal observations or test reports); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ permissibly could reject three evaluations because they were check-off reports that did not contain any explanation of the bases of their conclusions) (citation omitted).  An ALJ may also favor (i) individualized medical opinions over check-off reports; (ii) more recent reports/opinions over older reports/opinions; and (iii) opinions based upon a lengthier treatment relationship over opinions based upon a shorter treatment relationship.  Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports); 20 C.F.R. §§ 404.1527(d)(2)(i), 416.927(d)(2)(i) (generally more weight given to opinion of source with lengthier treatment relationship); Stone v. Heckler, 761 F.2d 530, 532 (9th Cir.1985) (earlier

(continued...)

6

1  in favor of a conflicting opinion of another examining physician if the ALJ makes

2  findings setting forth specific, legitimate reasons for doing so that are based on

3  substantial evidence in the record.  Id.  (citation and internal quotations omitted);

4  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by

5  setting out detailed and thorough summary of facts and conflicting clinical

6  evidence, stating his interpretation thereof, and making findings) (citations and

7  quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite

8  "magic words" to  reject a treating physician opinion – court may draw specific

9  and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer

10  his conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He

11  must set forth his own interpretations and explain why they, rather than the

12  [physician's], are correct."  Id.

13      If there is "substantial evidence" in the record contradicting the opinion of

14  the treating physician, the opinion of the treating physician is no longer entitled to

15  "controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  In that event,

16  the ALJ is instructed to consider certain specified factors in determining the

17  weight to accord the opinion of the treating physician.[4]  See 20 C.F.R.

18  §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).  Even when contradicted by an opinion

19  of an examining physician that constitutes substantial evidence, the treating

20

21

22      [3](...continued)
medical evaluations, based on claimant's condition several months before, do not constitute

23  substantial evidence to rebut the conclusions of a later report); Osenbrock v. Apfel, 240 F.3d
1157, 1165 (9th Cir. 2001) (treating physicians' most recent medical evaluation indicated that

24  impairment was mild and presented no significant interference with claimant's ability to perform
basic work-related activities); but see Young v. Heckler, 803 F.2d 963, 967-68 (9th Cir. 1986)

25  (ALJ properly rejected more recent report which lacked detailed findings and contradicted all

26  earlier medical reports).

27      [4]Those factors include the "[l]ength of the treatment relationship and the frequency of

28  examination" by the treating physician, and the "[n]ature and extent of the treatment
relationship" between the patient and the treating physician.  20 C.F.R. §§ 404.1527(d)(2)(i)-(ii),
416.927(d)(2)(i)-(ii).

7

1 physician's opinion is "still entitled to deference."  SSR 96-2p, <u>Orn v. Astrue</u>,

2 2007 WL 2034287, at *6 (9th Cir. July 16, 2007).  "In many cases, a treating

3 source's medical opinion will be entitled to the greatest weight and should be

4 adopted, even if it does not meet the test for controlling weight."  <u>Orn</u>, 2007 WL

5 2034287, at *6 (citation omitted).

6 **IV.    DISCUSSION**

7       **A.    Pertinent Facts**

8       On February 15, 2006, plaintiff's treating physician at the Swift-Phoenix

9 Clinic, Dr. Gurmit Sekhon, completed a Mental Work Capacity Evaluation.

10 (AR 321-22).  Significantly, the Mental Work Capacity Evaluation stated in its

11 instructions on the first page:  "*Please make your assessment apart from the*

12 *effects of drug or alcohol use or abuse.*"  (AR 321) (emphasis in original).  The

13 Mental Work Capacity Evaluation reflects that Dr. Sekhon:  (i) diagnosed plaintiff

14 with bipolar disorder and schizoaffective disorder (AR 322); (ii) checked the

15 boxes indicating that plaintiff had severe limitations in his ability to:  (a) perform

16 activities within a schedule, maintain regular attendance, and be punctual within

17 customary tolerances; (b) sustain an ordinary routine without supervision;

18 (c) work in coordination with or in proximity to others without being distracted by

19 them; (d) make simple work-related decisions; (e) interact appropriately with the

20 general public; (f) ask simple questions or request assistance; (g) accept

21 instructions and respond appropriately to criticism from supervisors; (h) get along

22 with co-workers or peers without distracting them or exhibiting behavioral

23 extremes; (i) maintain socially appropriate behavior and adhere to basic standards

24 of neatness and cleanliness; (j) respond appropriately to changes in the work

25 setting; (k) be aware of normal hazards and take appropriate precautions; and

26 (l) set realistic goals or make plans independently of others (AR 321-22);

27 (iii) checked the box indicating that plaintiff had marked limitations in his ability

28 to:  (a) remember locations and work-like procedures; (b) understand and

1  remember very short and simple instructions; and (c) maintain attention and
2  concentration for extended periods (AR 321); (iv) checked the box indicating that
3  plaintiff had moderate limitations in his ability to carry out very simple and short
4  instructions (AR 321); (v) checked the box indicating that plaintiff was not a
5  malingerer (AR 322); (vi) checked the box indicating that plaintiff's impairment
6  lasted or could be expected to last at least twelve months (AR 322); and
7  (vii) checked the box indicating that plaintiff would be expected to miss work at
8  least three times a month.  (AR 322).
9        The record contains outpatient notes from the Swift-Phoenix Clinic
10 concerning plaintiff's ongoing psychiatric treatment by Dr. Sekhon and other
11 treating medical personnel.  (AR 270-79, 281-91, 293-99, 301-19).[5]  The notes
12 span the time period of August 19, 2004 to January 25, 2006, and reflect that
13 plaintiff met with a physician approximately once a month.  (AR 270-79, 281-91,
14 293-99, 301-19).
15      **B.    A Remand is Appropriate**
16       Plaintiff contends that the ALJ improperly ignored the opinions of his
17 treating physician, Dr. Sekhon.  (Plaintiff's Motion at 2-5).  More specifically,
18 plaintiff asserts that the ALJ improperly failed to address the fact that Dr. Sekhon
19 rendered an opinion regarding plaintiff's mental residual functional capacity
20 without consideration of the effects of plaintiff's substance abuse.  As is apparent
21 from the above, Dr. Sekhon's opinion is significantly different than, and in many
22 respects contradicts, the opinion of the medical expert upon whom the ALJ relied.
23 As the articulated basis upon which the ALJ apparently chose to adopt the opinion
24 of the medical expert over the treating position is demonstrably and materially
25 erroneous, this Court agrees that a remand is appropriate.
26
27
28
        [5]The Administrative Record contains duplicate copies of medical reports from the Swift-
    Phoenix Clinic.  (AR 270-74, 276, 278-79, 296-99, 307-19).

1      The ALJ's <u>only</u> stated reason for attributing less weight to the opinions of

2   plaintiff's treating physicians was "because they do not discount the affects of the

3   claimant's drug use, as required by the regulations." (AR 15).  The ALJ materially

4   misstated the record.  As Dr. Sekhon provided opinions regarding plaintiff's

5   condition without consideration of the effects of plaintiff's substance abuse (AR

6   321-22), the ALJ's stated reason cannot constitute a "specific and legitimate

7   reason" for rejecting the opinions of plaintiff's treating physician that is supported

8   by substantial evidence in the record.  See <u>Thomas</u>, 278 F.3d at 957.

9      Based upon the record, it appears that the ALJ failed to recognize that Dr.

10  Sekhon's opinion reflects the treating physician's assessment of plaintiff's mental

11  work capacity "apart from the effects of drug or alcohol use or abuse."[6]  At the

12  February 16, 2006 proceeding, the ALJ summarized Dr. Sekhon's evaluation to

13  the medical expert, who testified telephonically and who did not then have a copy

14  of such evaluation with the limiting instruction before him.[7]  (AR 327-30).  The

15  ALJ, however, failed to mention the highly relevant instruction to the medical

16  expert.  Nor did the ALJ reference in his decision this limiting instruction or the

17  fact that plaintiff's treating physician had rendered an opinion which addressed

18  ///

19

20      [6]The Court has also considered the possibility that the ALJ was not convinced that Dr.
21  Sekhon followed the instructions on the Mental Work Capacity Evaluation.  However, the ALJ
    made no statement to that effect.  Even if the ALJ suspected that Dr. Sekhon ignored such
22  instruction and considered the effects of plaintiff's substance abuse, the ALJ had a duty fully and
23  fairly to develop the record and should have re-contacted Dr. Sekhon to seek clarification and to
    resolve any ambiguities in Dr. Sekhon's evaluation.  See 20 C.F.R. §§ 404.1512(e)(1),
24  416.912(e)(1) (the Administration "will seek additional evidence or clarification from your
    medical source when the report from your medical source contains a conflict or ambiguity that
25  must be resolved, the report does not contain all of the necessary information, or does not appear
26  to be based on medically acceptable clinical and laboratory diagnostic techniques."); see also
    <u>Webb</u>, 433 F.3d at 687 (ALJ has special duty fully and fairly to develop record and to assure that
27  claimant's interests are considered).

28      [7]The treating physician's report was, however, faxed to the medical expert before the
    expert stated his opinions.  (AR 330, 338).

10

1  plaintiff's work capacity in the absence of controlled substance use or abuse.[8]  To

2  the contrary, the ALJ pointed to the "fact" that plaintiff's treating physicians did

3  not discount the effects of plaintiff's drug use, and expressly chose not to grant

4  such opinions full evidentiary weight on that demonstrably incorrect basis.

5  (AR 15).

6      The ALJ's determination of plaintiff's residual functional capacity if he

7  were to cease using drugs is largely predicated on the medical expert's testimony

8  and the "fact" that "[t]here is no evidence that directly contradicts the opinion of

9  the medical expert." (AR 15).  As defendant concedes (Defendant's Motion at 3, 4

10  n.1), Dr. Sekhon's opinion *does* contradict the opinion of the medical expert

11  regarding plaintiff's residual functional capacity without consideration of

12  plaintiff's substance abuse.  Consequently, the ALJ's finding is materially

13  erroneous.[9]

14

15

16

17      [8]At the February 16, 2006 proceeding, per the request of the medical expert, the ALJ
18  summarized the categories on the Mental Work Capacity Evaluation in which Dr. Sekhon opined
    that plaintiff had extreme limitations. (AR 328).  The ALJ further noted that Dr. Sekhon
19  indicated that plaintiff was not a malingerer, that plaintiff's condition could be expected to last
    more than twelve months, and that Dr. Sekhon anticipated that plaintiff's impairments would
20  cause him to be absent from work more than three days per month. (AR 328-39).  The ALJ then
    stated, "Let's see if there's anything else in here.  That's it.  All right." (AR 329).  While the
21  ALJ later returned to the Mental Work Capacity Evaluation to summarize to the medical expert
22  the remaining categories in which Dr. Sekhon determined that plaintiff had moderate and marked
    limitations, the ALJ did not mention that such evaluation instructed Dr. Sekhon to provide his
23  opinions "apart from the effects of substance and alcohol use or abuse." (AR 321, 329).

24
        [9]For example, although Dr. Sekhon opined that plaintiff had "severe" or "marked"
25  limitations in several areas (e.g., performing activities within a schedule, maintaining regular
26  attendance, sustaining an ordinary routine without supervision, making simple work-related
    decisions, maintaining attention and concentration for extended periods, interacting appropriately
27  with the general public), the medical expert opined that plaintiff had only "mild" restrictions or
28  difficulties in the activities of daily living, in maintaining social functioning, and in maintaining
    concentration.

1   Since the ALJ's articulated reason for adopting the opinion of the medical

2   expert over the opinion of plaintiff's treating physician is demonstrably incorrect,

3   and since the adoption of the medical expert's opinion was material to the ALJ's

4   ultimate disability determination, remand is appropriate.

5   **IV.   CONCLUSION**[10]

6   For the foregoing reasons, the decision of the Commissioner of Social

7   Security is reversed in part, and this matter is remanded for further administrative

8   action consistent with this Memorandum Opinion and Order of Remand.[11]

9   LET JUDGMENT BE ENTERED ACCORDINGLY.[12]

10   DATED:   September 12, 2007

11

12   _____/s/_____

13   Honorable Jacqueline Chooljian
     UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19   _____

20   [10]Plaintiff also argues, and defendant disputes, that the ALJ failed properly to (i) consider
     plaintiff's subjective testimony; (ii) consider the lay witness testimony of plaintiff's mother; and

21   (iii) pose a complete hypothetical to the vocational expert.  The Court need not, and has not
     adjudicated these challenges to the ALJ's decision, except insofar as to determine that a reversal

22   and remand for immediate payment of benefits would not be appropriate.

23
     [11]When a court reverses an administrative determination, "the proper course, except in

24   rare circumstances, is to remand to the agency for additional investigation or explanation."
     Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and

25   quotations omitted).  Remand is proper where, as here, additional administrative proceedings
     could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.

26   1989).

27
     [12]Plaintiff's request for costs and reasonable attorneys' fees under the Equal Access to

28   Justice Act is denied without prejudice to resubmission of an application, accompanied by
     supporting documents, seeking such fees and expenses in accordance with 28 U.S.C. § 2412(d).

12